You're going to have to help me with the pronunciation of your name. It's Erica Minorich. Minorich? Yes. Okay, well good morning. Good morning. And I first want to thank you for your service under the Criminal Justice Act. The court certainly appreciates that. Thank you. May proceed. Okay, thank you. The government has conceded that the time between the indictment and the arrest in this case exceeds the threshold for triggering the Barker analysis. And so we know that the four-prong test should be applied. There's no argument, I believe, with the government with that. And the government has also conceded in its brief that the third prong, which would be whether or not Mr. Agustin Rodriguez-Valencia asserted his speedy trial right, that that has not been waived, and so really we're only fighting about the second and the fourth prong. And the second prong would be the reason for the delay. And because the analysis has been triggered, it is the government's burden to show that it used reasonable diligence in locating Mr. Rodriguez-Valencia. And it is our position that the government did not use reasonable diligence because it had information that he was either in California or Mexico. And that Mexico is an Interpol member country. Also, he's a Mexican citizen. And they did not use all of the tools that they should have used. And I'm not- Are they required to use all their tools? I believe, yes, they are required to use all of the tools that they have. Now, I would agree that every- Before you stop at all the tools, you think that every officer in the place, in the country, have to go looking for one person? Or, I mean, there's got to be a line somewhere. Sure. And I think that every case needs to be evaluated. This is a very factual type of issue. And no, I don't think that every police officer in the United States would have to look for an individual. But I think when there is an effective tool that the government should use that tool, when it has information that that tool would be helpful. There are a lot of cases where defendants have raised this issue and they didn't leave the country. And so, obviously, I wouldn't argue Interpol red notices should be issued in those cases. Even though that's a tool, that wouldn't be an appropriate tool in those cases. But I think in this case, it's an appropriate tool because they had reliable information all the way back in 2006 that he was likely in an Interpol member country. Additionally, I think that the government knows it's an effective tool, because eventually, after five years had passed, they did issue an Interpol red notice. Well, typically, we talk about the government intentionally or strategically delaying. I don't hear you arguing that. I hear you saying that they were maybe negligent. Yes, sir. I don't think there was any- Law that says negligence without intentional or tactical strategic action, that negligence alone. Yes, Judge. I think that the Supreme Court case, the Dodgett case that I focus most of my argument on, that was a case of negligence. That was an intentional delay. That was just, that was not using all of the tools that they could. Also, I was looking to see if any new cases have popped up. And four days ago, the Third Circuit issued an opinion. In United States, the VELAZQUEZ, which is spelled V-E-L-A-Z-Q-U-E-Z. And I have copies for the court and for miscounts. I wasn't sure if I was going to bring this up, because the facts in that case are rather different. But that is a case about negligence. And that Westlaw citation, if you want that, is 2014, West WL 1410153, and that was just four days ago from the Third Circuit. And they did reverse the defendant's conviction in that case. They did find that his speedy trial right was violated because the government was negligent in its efforts. And actually, the Third Circuit in that case talks about not using all reasonable efforts to find the defendant. And the court even, I like that case because I think when we're thinking about these issues, we kind of, I feel like it gets muddied about whose burden it is to show reasonable diligence and prejudice. And it's the government's burden during this test. It's the government's burden to show that it used reasonable diligence. But it's also the government's burden after a certain prolonged period of time to show that. Basically, how do I word this? We've gone past six years. And the Supreme Court in Dodge it says, after six years, that's an excessive delay. And so we can presume prejudice when there's a six year delay. And I'm not saying that it can't be less, but I know at least in that case it was six and they said that was excessive. I know- You've said that this is fact specific. Where do you go into the district court's order or the report and recommendation as to a finding of this issue? Discuss negligence, you're saying you're not alleging an intentional. How do you read the ruling from the district court? Is it an implicit finding? What is it? Well, the magistrate court did the report and recommendation. The district court adopted it. And the magistrate court said, basically, the government did a whole bunch of stuff. And I was the attorney at the time, didn't. So it says, with regard to the reason for the delay, the United States details the activity of the DEA and the marshals and their attempt to locate the defendant, those details have not been disputed. And I wasn't disputing those details. I think that the court implicitly was finding- So you think there's an implicit finding from the district court that this was reasonable diligence? Yes, and I understand that this court has to give deference to those findings. However, I do think that the finding is clearly erroneous. Because, as I mentioned in my objections to this report, absolutely, the marshals in Springfield are wonderful. They did a lot of stuff. But I just don't think that the marshals and the United States Attorney's Office, the government as a whole, did what they needed to do, what they should have done. They did a whole bunch of stuff. But I don't think that that flurry of activity should distract from the fact that there was a tool to use and it wasn't used. And I think the fact they used it later shows that they knew they could do this, they just didn't. And it particularly bothers me that after the five years when my client was stopped in Nicaragua, that an interpol notice at least wasn't then done. A whole nother year passed, and then the government finally did it. At least, now that you- Let me ask you this, and this kind of goes to the magistrate finding that was adopted. While the finding of prejudice may be presumed by delay, such is not the case when the reason for the delay in the efforts to locate the defendant are as they have been detailed in this case. Now that's pretty vague, but I guess the district court's saying there was no actual prejudice, do you argue that there was actual prejudice? No sir, I do not argue that there is actual prejudice. What I'm arguing is that in Dodge it, the court said that excessive delay compromises the reliability of a trial in ways that neither party can prove or for that matter identify. And that the durational requirement for relief without specific prejudice, which I'm not alleging specific prejudice, when the durational requirement is six years or more, and the Fifth Circuit has said five years, and this court has said three years. It can even be, because it's all fact specific. But that because we're so long, the negligence went on for so long that I get the presumption of general prejudice. And actually, it becomes the government's burden to disprove general prejudice. And that Third Circuit case that I mentioned, it's interesting because the Third Circuit said the government faces a high and it's extraordinary long, and I realize that's a very high burden, but I do believe that is the government's burden because it has been so long. And negligence is not automatically tolerable just because I can't show actual prejudice for my client and that he can't. And I'm about to lose my time if I could save it for rebuttal unless you have questions now. I'll give you one minute in rebuttal. Okay, great. Thank you. So you want me to keep going now? I have four minutes for rebuttal, is what I'm saying. Yeah, you can come back up for one minute. Okay. Okay, time's up now. Right, but I reserved four for rebuttal. No, no, no, you've used it. I have? Goodness, well, thank you. Time flies. It does. Good morning. Good morning, may it please the court, council. My name is LaJuanna Counts, I'm the Assistant United States Attorney for the Western District of Missouri. And the key issue here is the reason for the delay, which is the second factor under Barker. The district court here found that there was no negligence on the part of the government here. And that the officers did use reasonable, diligent efforts to find Mr. Rodriguez-Valencia. Council, do we just have these two, well it's not even two pages. Do we just have, is the report and recommendation of the magistrate judge, am I looking at the right thing? It's a document 158, it's in the addendum to the other side's brief, pages six and seven? Yes, that's correct, your honor. Yeah, it's not even a full page, right? Correct, it's- So where are there any findings at all? What the court did, it looked at the information that was provided by the government in its response to the motion to dismiss. And found that those details that the agents made to make efforts to find Mr. Rodriguez-Valencia were not disputed. And so the court adopted the undisputed facts that were in the United States' response. And so all those details, I guess this court will go from the details that were in the government's response. And- And that's in the record, is the government's response in the record? Yes, yes it is, your honor. So we can get it in the district court, but it's clearly here. It's document 155. Well, just because the details have not been disputed, does that mean that the magistrate made a, or in district court, made a sufficiently focused conclusion about those facts? As to whether they were reasonably diligent or potentially negligent. Do we have enough here to go on on a conclusion of those undisputed facts? I believe so, your honor, because when the report and recommendation said that they looked at the, I guess they looked at all of the motions that were filed and found that the activities, the details in the document number 158 says the United States details, the activity of the Drug Enforcement Agency and the United States Marshal Service and their attempt to locate the defendant. And since the court looked at those details, that they were adopting those as their own. And so I think that this court, they had enough to say that the government made reasonable and diligent, Valencia. Counsel for the defendant says she believes the district court found reasonable diligence. I think that's probably pretty generous on her part. Where do you see in the important recommendation or the order of finding a reasonable diligence by the government? Your honor, I think- And you put it, the way you put it, you said found that there was no negligence. So whether we call it finding a no negligence or finding a reasonable diligence, where do we look? I think you have to look at all of the documents that were submitted by the parties. And since the defense counsel, they did not object to any of the facts that were in the government's response. In fact, I think even from the beginning until even the briefs, that they never disputed all the efforts that were made by the government. Well, but you understand, you can agree to all the facts, but the conclusion, say district court looks at all those facts and says, in my opinion, that's reasonable diligence, or in my opinion, that's non-negligence. I'm looking for that conclusion. The court accepted all the facts as undisputed, but I assume the fact that it ruled in your favor, maybe that fact alone says the district court found no negligence or reasonable diligence. Yeah, I think it's not specifically stated that the agency used reasonable diligence in those specific words, but it's implied from the report and recommendation and from the district court's order that the details were sufficient enough to say that the agencies used all of their efforts to find Mr. Rodriguez Valencia. So I think it's implied that the government had a reasonable, that they met that burden in the second factor, that they were reasonable diligence. Ms. Counsel, I know we indulge the lower courts a lot and presume they know the law and all that, but looking at this, you'd have no clue, right, about reasonable diligence. You'd have no clue about most of the stuff that we've discussed here at oral argument. Looking at the report and recommendation, and the district court just recounts the opposition points, and then just says they're overruled. I think even in the report and recommendation, it says what the defendant's arguments were that there was negligence on the part of the government, and that the court did not find that. Is the word negligence in the report and recommendation the magistrate judge? I'm sorry, I was looking at the- I don't think it is. What is the, the only sentence that I can see in the whole opinion of either is this sentence on the report and recommendation that says, finally, while the finding of prejudice may be presumed by the delay, such is not the case when the reason for the delay in the efforts to locate the defendant are as they have been detailed in this case. That seems to be the only conclusion or opinion language in there. So, what does that mean? I believe that means that the government was reasonable and diligent in their efforts. And Judge Benton is, in the order, in the district court's order, it does say what the defense counsel's argument was. And their number one, it's document number 161, it's talking about the presumptively prejudicial delay in this case resulted from the government's negligence. And their failure to submit the Interpol Red Notice. And so, it does state in the district court's order what the- So, when the district court sets forth the defendant's challenges, and the fact that the district court didn't adopt those, when one of the challenges is that the government was negligent, you're saying that means that the district court found that they were not negligent. Yes, your honor. That it was reasonable and diligent. Well, there's some logic in that. It would have been helpful if the court would have just said that. I understand, yes. I have a question of, if I have the dates of the various efforts that law enforcement took to find this man. If I have those accurate, it seems that the government, if I'm right, in December of 2010, the marshals knew that the defendant was in Nicaragua, correct? Yes, yes, your honor. And it was a full year before they submitted an Interpol request? Is that correct? Well, they did make some efforts in the meantime. I know one thing that was in their record was them submitting a request for fingerprints from the FBI. But no immediate request for the Interpol. I mean, at that point, it seems they've got knowledge that he's traveling across international lines. I think when you submit your Interpol red notice, it's not just an automatic action. I guess it takes some time. From what I understand, it's not all in the brief. So I think they were making steps toward filing the red notice. There was some time between when they knew that Rodriguez Valencia was in Nicaragua. That they filed the red notice about a year later. So they actually started that process, submitted that a year later, okay. And your position is that that doesn't show any negligence on the part of the law enforcement? Because I think by that time, they'd been looking for him for about four years, right? They had, and as you see from the briefs, they had made efforts throughout the United States, nationwide searches. Following up on phone numbers, trap and traces, forwarding information to Mexico on phone numbers that they had received from Rodriguez Valencia's mother and sister. And so they continued to follow up on all the information that they were provided and that they had found. Now what about prejudice? Defense counsel says she's not arguing there was any specific or actual prejudice, but she has a presumption, rebuttable presumption, but a presumption. And what did the government offer that obviously we reason the same way on presumption as negligence that they raised it and the district court rejected it. So the court must have found something that you met your burden. So what did the government say with regard to prejudice? You're on my time, I was up there. Go ahead. When the district court finds that the government was reasonable and diligent in their efforts, the next step according to the case law from this circuit is that the defense has the burden of alleging specific prejudice. And that's in the arenas, Luna's case from this court. So once the, and in this case, Mr. Rodriguez Valencia has not alleged any prejudice at all. But the docket case doesn't apply, doesn't require specific prejudice, right? It talks about a presumption of prejudice. In the docket case, your honor, the court found that there was negligence on the part of the government. And so once, if there's negligence on the part of the government, then you go to the prejudice prong. It's presumed that there is prejudice, but then that's a rebuttable presumption that the government can overcome. But in this case, in our case, since the court found there was reasonable and diligent efforts, it's the defense. They have to specify what prejudice they have incurred as a part of the delay. Okay. Okay. Thank you. And we ask that you affirm the district court. Thank you. Thank you. All right, give her one minute. Thank you for the extra minute. And I'd like to address, Judge Kelly, your question about the inner poll. There was five years that had passed before Augustine was stopped in Nicaragua. And at that point, that was December 28th of 2010, and the marshals requested fingerprints April 13th of 2011. So I still don't know why there was a four. I don't know for sure that the fingerprints have to be had to do the inner poll, but even assuming that they have to, I don't understand the four month wait to get those fingerprints. And then submitting the inner poll in December of 2011, and then asking Judge England to unseal the indictment in February. It doesn't seem like that there were really diligent efforts after that December 28th, 2010 stop to get the ball rolling on an inter-poll. And I don't think the record has any facts showing that anything was actually being done. I think that's speculative. And also, the agents did do things, send information to Mexico prior to that. So they did think there was a chance he was in Mexico, which is inter-poll. Thank you. Thank you very much. Well, we do appreciate your arguments, and we will try to figure this out and be back to you in due course. Thank you. Smith, would you call the next and last piece, please? United States versus Jose Malagon Soto. He's getting a fan. Hey, Mr. Mercer, you're first up.